**15-1518-cr**
*United States v. Jones*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2015

ARGUED: APRIL 27, 2016
DECIDED: JULY 21, 2016

No. 15-1518-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

COREY JONES,
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 13 Cr. 00438 – Nicholas G. Garaufis, *Judge*.

————

Before: WALKER, CALABRESI, and HALL, *Circuit Judges*.

————

Defendant Corey Jones appeals from a sentence entered in the

United States District Court for the Eastern District of New York

(Garaufis, *J.*) following a jury trial convicting him of assaulting a

federal officer in violation of 18 U.S.C. § 111.  He was sentenced as a career offender principally to 180 months in prison to be followed by three years of supervised release.  He argues on appeal that, in light of the Supreme Court's holding in *Johnson v. United States*, 559 U.S. 133 (2010), New York robbery is no longer necessarily a "crime of violence" within the meaning of U.S.S.G. §§ 4B1.1(a) and 4B1.2(a) and that the district court therefore erred in concluding that his prior conviction for first-degree robbery could automatically serve as one of the predicate offenses for a career offender designation.  He also argues that his sentence is substantively unreasonable.  We conclude that, after *Johnson*, a conviction for first-degree robbery in New York is not in every instance a conviction for a "crime of violence" and therefore VACATE his sentence and REMAND for resentencing.

————

MARGARET LEE, Assistant United States Attorney (Amy Busa, Assistant United States Attorney, *on the brief*), *for* Robert L. Capers, United States Attorney for the Eastern District of New York, *for Appellee*.

MATTHEW B. LARSEN, Assistant Federal Defender, Federal Public Defenders of New York, *for Defendant-Appellant*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant Corey Jones appeals from a sentence entered in the United States District Court for the Eastern District of New York (Garaufis, *J.*) following a jury trial convicting him of assaulting a federal officer in violation of 18 U.S.C. § 111. He was sentenced as a career offender principally to 180 months in prison to be followed by three years of supervised release. He argues on appeal that, in light of the Supreme Court's holding in *Johnson v. United States*, 559 U.S. 133 (2010), New York robbery is no longer necessarily a "crime of violence" within the meaning of U.S.S.G. §§ 4B1.1(a) and 4B1.2(a) and that the district court therefore erred in concluding that his prior conviction for first-degree robbery could automatically serve as one of the predicate offenses for a career offender designation. He also argues that his sentence is substantively unreasonable. We conclude that, after *Johnson*, a conviction for first-degree robbery in New York is not in every instance a conviction for a "crime of violence" and therefore VACATE his sentence and REMAND for resentencing.

## BACKGROUND

On June 21, 2013, Corey Jones was in a halfway house, finishing a 92-month federal sentence for unlawful gun possession. After Jones allegedly verbally threatened a staff member, two Deputy U.S. Marshals came to take Jones to prison. Jones resisted the Marshals' efforts to take him into custody and, during the

ensuing altercation, Jones bit the finger of one of the Marshals, who suffered puncture wounds and received antibiotics and a tetanus vaccine at a hospital.

A jury convicted Jones of assaulting a federal officer in violation of 18 U.S.C. § 111. In the pre-sentence report, the probation officer calculated an offense level of 15 for the assault. However, the probation officer determined that Jones was a career offender pursuant to U.S.S.G §§ 4B1.1(a) and 4B1.2(a) (the "Career Offender Guideline") because, in addition to (1) being over 18 years of age when he had committed the assault and (2) the instant offense being a crime of violence, (3) he "[had] at least two prior felony convictions of . . . a crime of violence." The probation officer concluded that Jones's previous convictions in New York for first-degree robbery and second-degree assault satisfied the third element of the test. As a result of the career offender designation, the probation officer increased the offense level to 32, which, combined with Jones's criminal history category of VI, resulted in a Guidelines range of 210 to 262 months in prison. Because the statutory maximum for assault is 20 years, the probation officer adjusted the top of the range down to 240 months.

The district court adopted the findings contained in the pre-sentence report and sentenced Jones to 180 months in prison to be followed by three years of supervised release.

Jones now appeals his sentence, arguing first that the district court erred in sentencing him as a career offender and second that his sentence was substantively unreasonable.

## DISCUSSION

We must resolve the question of whether a first-degree robbery conviction in New York is necessarily a conviction for a "crime of violence" such that it will always be a predicate offense for a sentencing enhancement under the Career Offender Guideline. At first glance the answer to this question might appear to be a straightforward "yes," as we held in *United States v. Spencer*, 955 F.2d 814, 820 (2d Cir. 1992). However, Jones argues that our holding in *Spencer* cannot survive the Supreme Court's analysis in *Johnson v. United States*, 559 U.S. 133 (2010). We conclude that he is correct. The Supreme Court's analysis in *Johnson* compels us to overrule our holding in *Spencer* and to hold that a first-degree robbery conviction in New York is no longer necessarily a conviction for a "crime of violence" as that term is used in the Career Offender Guideline.

Because Jones did not raise his argument about *Johnson*'s applicability to New York's first-degree robbery statute before the district court, we review for plain error. *United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam). To meet this standard, Jones must establish the existence of (1) an error; (2) "that is plain"; (3) "that affects substantial rights"; (4) and that "seriously affects the

fairness, integrity or public reputation of judicial proceedings." *Id*. (internal quotation marks and alterations omitted). We apply this standard less "stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context." *Id.* We first turn to whether the district court committed error before addressing the remaining plain error requirements.

## I.    The Legal Provisions at Issue in this Appeal

This appeal involves the interplay between three legal provisions: the Armed Career Criminal Act ("ACCA"), the Career Offender Guideline, and New York's robbery statute. We must determine whether first-degree robbery in New York, defined in New York Penal Law §§ 160.00 and 160.15, is necessarily a "crime of violence" under the Career Offender Guideline. To do so, we must address the relationship between the term "crime of violence" in the Guideline and the term "violent felony" in the ACCA, as explicated in *Johnson.*

The ACCA requires sentencing judges to impose a sentence of at least 15 years' imprisonment on offenders who are convicted of illegally possessing a firearm or ammunition and who have "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as a felony "that has as an element the use, attempted use, or

threatened use of physical force against the person of another." *Id.* §
924(e)(2)(B)(i).

The Career Offender Guideline enhances sentences for
defendants who are career offenders. U.S.S.G §§ 4B1.1(a). A
defendant is a career offender if (1) he is "at least eighteen years old
at the time [he] committed the instant offense of conviction"; (2) his
"instant offense of conviction is a felony that is . . . a crime of
violence"; and (3) he "has at least two prior felony convictions of . . .
a crime of violence." U.S.S.G §§ 4B1.1(a). In defining "crime of
violence," U.S.S.G. § 4B1.2(a)(1) uses language identical to that in the
ACCA's definition of "violent felony." A crime of violence is a
felony "that has as an element the use, attempted use, or threatened
use of physical force against the person of another." U.S.S.G. §
4B1.2(a)(1).

A defendant commits robbery in New York when he "forcibly
steals property," which the statute defines as "a larceny" involving
the use or threatened "immediate use of physical force upon another
person."[1] N.Y. Penal Law § 160.00. The various degrees of robbery,

---

[1] That statute provides, "Robbery is forcible stealing. A person forcibly
steals property and commits robbery when, in the course of committing a
larceny, he uses or threatens the immediate use of physical force upon
another person for the purpose of: 1. Preventing or overcoming resistance
to the taking of the property or to the retention thereof immediately after
the taking; or 2. Compelling the owner of such property or another person

which carry differing penalties, turn on the presence or absence of particular aggravating factors. *Compare id.* § 160.05 (defining third-degree robbery), *with id.* § 160.10 (defining second-degree robbery), *and with id.* § 160.15 (defining first-degree robbery). A defendant commits first-degree robbery in New York when he commits robbery and during the course of the crime or his immediate flight either "(1) [c]auses serious physical injury to any other person who is not a participant in the crime; or (2) [i]s armed with a deadly weapon; or (3) [u]ses or threatens the immediate use of a dangerous instrument; or (4) [d]isplays what appears to be a . . . firearm." *Id.* § 160.15.

##### II.   The Interpretation of "Violent Felony" under the ACCA in *Johnson*

In *Johnson*, the Supreme Court held that "the Florida felony offense of battery by actually and intentionally touching another person" does not have "as an element the use of physical force against the person of another," and thus does not "constitute[] a 'violent felony' under the [ACCA]."   559 U.S. at 135 (internal quotation marks and alterations omitted). The Court reached this conclusion after considering the ordinary definition of "force," which "suggest[s] a degree of power that would not be satisfied by the merest touching," and its common law definition, which

---

to deliver up the property or to engage in other conduct which aids in the commission of the larceny."  N.Y. Penal Law § 160.00.

encompasses "even the slightest offensive touching." *Id.* at 139. The Court determined that the term's ordinary meaning made more sense in the context of the definition of a "violent felony" because "by itself, the word 'violent' . . . connotes a substantial degree of force . . . [but] [w]hen the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." *Id.* at 140. Therefore, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another." *Id.* (emphasis in original). Correspondingly, force that is not "capable of causing physical pain or injury to another," *id.*, i.e. less-than-"violent," cannot qualify a crime as a violent felony for use as an ACCA predicate.

In *Johnson* the Supreme Court interpreted the ACCA's use of "violent felony," whereas here we are called on to interpret the Career Offender Guideline's use of "crime of violence." However, we have previously applied the Supreme Court's analysis in *Johnson* to determine what constitutes a "crime of violence" within the meaning of the Career Offender Guideline, *United States v. Reyes*, 691 F.3d 453, 458 n.1 (2d Cir. 2012) (per curiam), and for good reason. Because of "the substantial similarity between the ACCA's definition of 'violent felony' and the [Career Offender] Guidelines' definition of 'crime of violence,' authority interpreting one phrase

frequently is found to be persuasive in interpreting the other phrase." *United States v. Walker*, 595 F.3d 441, 443 n.1 (2d Cir. 2010) (internal quotation marks and alterations omitted). We see no reason to depart from our previous approach and we therefore apply *Johnson*'s analysis of "violent felony" to the Career Offender Guideline's use of "crime of violence."

### III.    The Categorical and Modified Categorical Approaches

The Supreme Court has recognized two approaches to determining whether a state crime qualifies as a predicate crime under the ACCA: the categorical approach and the modified categorical approach. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). The categorical approach is confined to an examination of the text of the state's criminal prohibition to determine whether it is identical to or narrower than the generic crime under the ACCA. *Id.* If so, a conviction under the state statute qualifies as an ACCA predicate. *Id.* The modified categorical approach permits a court to "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

The Supreme Court has made clear in *Descamps* and *Mathis* that the modified categorical approach is only available in a very limited circumstance to achieve a very limited purpose. Where the

state statute is divisible—i.e. it proscribes multiple crimes with different elements—the modified categorical approach can be employed to determine which crime pertains to the defendant's actual conduct. *Mathis*, 136 S. Ct. at 2249. Once that determination is made, the purpose of the modified categorical approach is at an end. *Id.* The court must then use the categorical approach to determine whether the statutory elements of the crime of conviction so determined are equal to or narrower than the ACCA generic crime. *Id.* If the statutory elements permit a conviction for a crime that is not within the scope of the ACCA generic crime then it cannot be used as an ACCA predicate and that is true even if the modified categorical approach would demonstrate that in fact the actual conduct of the defendant was fully consistent with the generic crime. *Id.* at 2248.

When analyzing statutes using the categorical approach, we focus on the elements of the crime of conviction and not the facts underlying the crime for two reasons. First, the text of the Career Offender Guideline, like the text of the ACCA, explicitly refers to convictions and not conduct. *Id.* at 2252. The Career Offender Guideline directs the sentencing court to consider whether the offender "has at least two prior felony convictions of . . . a crime of violence," U.S.S.G §§ 4B1.1(a), which indicates that "the sentencer should ask only about whether the defendant had been convicted of

crimes falling within certain categories, and not about what the defendant had actually done." *See Mathis*, 136 S. Ct. at 2252 (internal quotation marks omitted).

Second, a focus on the elements of the crime of conviction, rather than the facts of what the defendant did "avoids unfairness to defendants." *See id.* at 2253. "Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary," *see id.*, so defendants may have little incentive to ensure the correctness of records of earlier convictions that could later trigger the career offender enhancement.

Whether we apply the categorical or modified categorical approach to a state statute depends on whether the statute is indivisible or divisible. *See Flores v. Holder*, 779 F.3d 159, 166 (2d Cir. 2015). A statute is indivisible if it "sets out a single . . . set of elements to define a single crime," while a statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis*, 136 S. Ct. at 2249.

New York's first-degree robbery statute is divisible, and thus eligible for the modified categorical approach, because it lists four categories of first-degree robbery: "forcibly stea[ling] property" while either "(1) [causing] serious physical injury to any person who is not a participant in the crime; or (2) [armed] with a deadly weapon; or (3) [using or threatening] the immediate use of a

dangerous instrument; or (4) [displaying] what appears to be a . . . firearm." N.Y. Penal Law § 160.15; *see Flores*, 779 F.3d at 166 (analyzing the divisibility of New York's first-degree sexual abuse statute).

In this case, however, we are unable to employ the modified categorical approach to determine which of the four subparts of the statute provided the basis for Jones's first-degree robbery conviction because the facts underlying his conviction are not in the record before us. Where this occurs we must determine whether "the least of [the] acts" described in the first-degree robbery statute can serve as a predicate offense for the career offender enhancement. *See Johnson*, 559 U.S. at 137. If so, then Jones's first-degree robbery conviction can serve as a predicate offense for the enhancement, regardless of which subpart provided the basis for his conviction. If not, then his conviction cannot serve as a predicate offense unless the district court later determines under the modified categorical approach, with the benefit of further evidence and argument, that Jones was convicted under a subpart of the first-degree robbery statute that constitutes a violent felony.

Jones identifies the act of "forcibly stealing property" while "armed with a deadly weapon" as being the "least of [the] acts" in the statute, and we agree. N.Y. Penal Law § 160.15(2). Therefore, the question we must answer in this appeal is whether a defendant

who "forcibly steals property" while "armed with a deadly weapon" necessarily commits a "crime of violence" within the meaning of the Career Offender Guideline.  *See Johnson*, 559 U.S. at 137.

### IV.   Applying Johnson to New York's First-Degree Robbery Statute

In applying *Johnson*'s definition of physical force to New York Penal Law § 160.15(2), we would normally be bound by how the New York Court of Appeals has interpreted § 160.00 and § 160.15. *See Johnson*, 559 U.S. at 138.  If the New York Court of Appeals has not ruled on a particular question, however, "the decisions of [New York State's Appellate Division] are helpful indicators" for ascertaining how the Court would rule, and we cannot disregard such decisions "unless [we are] convinced by other persuasive data that the [New York Court of Appeals] would decide otherwise." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000).

The New York Court of Appeals has not ruled on whether the force supporting a robbery conviction can be less than violent. Decisions of the lower courts, however, have made clear that "forcible stealing" alone does not necessarily involve the use of "violent force."   Appellate Division decisions have held that the requisite force can be established by "evidence that [the defendant] and three others formed a human wall that blocked the victim's path as the victim attempted to pursue someone who had picked his pocket, allowing the robber to get away," *People v. Bennett*, 219

A.D.2d 570, 570, 631 N.Y.S.2d 834, 834 (N.Y. App. Div. 1st Dep't 1995); evidence that the "defendant bumped his unidentified victim, took money, and fled while another forcibly blocked the victim's pursuit," *People v. Lee*, 197 A.D.2d 378, 378, 602 N.Y.S.2d 138, 139 (N.Y. App. Div. 1st Dep't 1993); or evidence that "the store clerk grabbed the hand in which defendant was holding the money and the two tugged at each other until defendant's hand slipped out of the glove holding the money," *People v. Safon*, 166 A.D.2d 892, 893, 560 N.Y.S.2d 552, 552 (N.Y. App. Div. 4th Dep't 1990).

It is immaterial that the defendants in *Bennett*, *Lee*, and *Safon* were convicted of second- and third-degree robbery rather than first-degree robbery.  In New York, all degrees of robbery involve "forcible stealing" and are distinguished by the presence of other aggravating factors.  *Compare* N.Y. Penal Law § 160.00 (describing the force required for robbery in general), *with id.* § 160.15 (listing the elements that make forcible stealing first-degree robbery).

Because Appellate Division decisions have interpreted "forcible stealing," *id.*, so that it does not always involve "force capable of causing physical pain or injury to another," *Johnson*, 559 U.S. at 140, and because we have no "persuasive data that the [New York Court of Appeals] would decide otherwise," *Michalski*, 225 F.3d at 116, we are compelled to conclude in the wake of *Johnson* that a New York robbery conviction involving forcible stealing, absent

other aggravating factors, is no longer necessarily a conviction for a "crime of violence" within the meaning of the Career Offender Guideline.

The question remains whether the less-than-violent force that is required for "forcible stealing" inevitably becomes "violent force" within the meaning of *Johnson* when the perpetrator is "armed with a deadly weapon" as specified in New York Penal Law § 160.15(2). The New York Court of Appeals, whose interpretations of state statutes bind us, *see Johnson*, 559 U.S. at 138, has stated that a defendant can be convicted under Subsection Two based simply on his possession of a deadly weapon during the robbery, even if he never brandishes, uses, or threatens to use such a weapon, *see People v. Pena*, 50 N.Y.2d 400, 407 n.2, 406 N.E.2d 1347 (1980).  We must therefore decide whether a robber's use of less-than-violent force while carrying on his person but not using or threatening the use of a deadly weapon constitutes "force capable of causing physical pain or injury to another."  *Johnson*, 559 U.S. at 140.

The presence of a deadly weapon on the person of a robber does increase the likelihood that the robber will seriously injure the victim or a third party during or after the crime, but *Johnson* directs our inquiry not to the risk of injury but to the nature of the force employed.  *See id.* ("[T]he phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to

another person." (emphasis omitted)).    The Career Offender

Guideline's residual clause, which defines "crime of violence" as a

crime involving "conduct that presents a serious potential risk of

physical injury to another," U.S.S.G. § 4B1.2(a)(2), focuses on the risk

of harm created by a defendant's conduct, but this clause is likely

void for vagueness in light of the Supreme Court's analysis of the

ACCA's identical phrase in *Johnson v. United States*, 135 S. Ct. 2551

(2015) ("*Johnson 2015*").[22]  *See United States v. Welch*, No. 12-4402-CR

(L), 2016 WL 536656, at *4 (2d Cir. Feb. 11, 2016) (summary order);

*see also Beckles v. United States*, No. 15-8544, 2016 WL 1029080, at *1

(U.S. June 27, 2016) (granting certiorari to resolve the question of

whether *Johnson 2015* applies to the Career Offender Guideline's

residual clause).  If we were to hold that a robbery committed by a

robber who uses less-than-violent force while carrying a deadly

weapon on his person—but not displaying, using or threatening the

use of that weapon— constitutes a "crime of violence" based on the

elevated likelihood that the robber would injure someone else, we

would be ignoring the victim-centric inquiry required by *Johnson*,

---

[22] Since *Johnson 2015*, moreover, the Sentencing Commission has amended the Career Offender Guidelines, effective August 1, 2016, to remove the residual clause from the "crime of violence" definition.  *See* U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines 1-3 (Jan. 21, 2016), http://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/20160121_Amendments_0.pdf.

559 U.S. at 140, and employing the risk-centric inquiry that the Supreme Court rejected in *Johnson 2015*, 135 S. Ct. at 2557

When we conduct the inquiry *Johnson*, 559 U.S. at 140, requires, we cannot conclude that the presence of a gun that a robber does not display, use, or threaten to use during a robbery has any effect on the nature of the force that the robber exerts on his victim. Put another way, a robber's possession of a concealed and unmentioned weapon while he commits a robbery can support a first-degree robbery conviction under § 160.15(2) but such possession cannot turn what is otherwise less-than-violent force into violent force. It is therefore possible to commit first-degree robbery in New York in a way that does not fall within the Career Offender Guideline's definition of "crime of violence."

The government's arguments to the contrary do not persuade us. The cases it cites from our Circuit, in which we affirmed that robbery in New York is a crime of violence, either predate *Johnson* and are thus irrelevant to the question on appeal or are summary orders that do not engage with the applicability of *Johnson* to New York's first-degree robbery statute. The government's recounting of the state of the law in other circuits is unavailing. Two of the cases, *United States v. Johnson*, 634 F. App'x 227, 232 (11th Cir. 2015) (per curiam), *petition for cert. filed*, No. 15-8448 (U.S. Mar. 8, 2016), and *United States v. Dobbin*, 629 F. App'x 448, 452 (3d Cir. 2015), *cert.*

*denied*, No. 15-9101, 136 S. Ct. 2403 (May 31, 2016), do not address the effect of *Johnson* at all. The other cases involve state statutes that are materially distinguishable from New York's first-degree robbery statute and are thus of limited relevance to our analysis.

In sum, we hold that, because a defendant can be convicted of first-degree robbery under New York Penal Law § 160.15(2) without necessarily using violent force, a first-degree robbery conviction obtained pursuant to this subsection cannot serve as a predicate conviction for a career offender enhancement. We must conclude therefore that the district court erred in sentencing Jones as a career offender based on his prior conviction for first-degree robbery without determining under the modified categorical approach which subsection of § 160.15 provided the basis for his conviction.

## V.    The Remaining Elements of Plain Error Review

To obtain resentencing under a plain error standard of review, Jones must demonstrate that the district judge's error in sentencing him as a career offender based on his first-degree robbery conviction "is plain[,] . . . affects [his] substantial rights[, and] seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gamez*, 577 F.3d at 397.

We turn to the question of whether the district court's error was plain when it enhanced Jones's sentence as a career criminal under the Career Offender Guideline. In *Reyes*, we applied *Johnson*'s

analysis to conclude that the Florida offense of battery of a law enforcement officer was not necessarily a "crime of violence" as that term is used in the Career Offender Guideline. *Id*. While *Reyes* analyzed the similarity of the Florida statute at issue in that case to the Florida statute at issue in *Johnson*, *Reyes* also established that *Johnson*'s definition of "physical force" in the ACCA applies to the determination of what constitutes a "crime of violence" within the meaning of the Career Offender Guideline. *See Reyes*, 691 F.3d at 458-60. Because *Reyes* is binding precedent and makes clear that *Johnson*'s definition of "violent felony" is relevant to a determination of what constitutes a "crime of violence" under the Career Offender Guideline, any error that results from failing to apply *Johnson* to the Career Offender Guideline's definition of "crime of violence" is plain.

The final two elements of the plain error test are straightforward. Jones's classification as a career offender raised his Guidelines sentencing range from between 37 and 46 months to between 210 and 240 months. This is sufficient to establish that the error both "affected his substantial rights" and "seriously affected the fairness and integrity of the judicial proceedings." *See Reyes*, 691 F.3d at 460 ("The district court's error in sentencing [the defendant] as a career offender . . . affected his substantial rights because it resulted in an elevated offense level under the Guidelines."); *Gamez*,

577 F.3d at 401 ("[E]rror resulting in a significantly overstated advisory Guidelines range seriously affected the fairness and integrity of the proceedings."). Jones therefore has satisfied the elements of the plain error review and we must remand for resentencing.

## VI.  The Proceedings on Remand

We hold here that using the categorical approach a first-degree robbery conviction for "forcible stealing" by a defendant "armed with a deadly weapon," § 160.15(2), cannot serve as a predicate conviction for a career offender enhancement pursuant to the Career Offender Guideline because it is possible that a conviction under that particular subsection would be for conduct that did not rise to the level of violent force required by *Johnson*. Our holding does not apply to the other subdivisions of § 160.15. Therefore, on remand, if the government can demonstrate under the modified categorical approach, *see Descamps*, 133 S. Ct. at 2284-85, that Jones was convicted of first-degree robbery under § 160.15(1), (3), or (4), and the court finds that a conviction under the relevant subsection is a conviction for a crime of violence within the meaning of the Career Offender Guideline, Jones may still be sentenced as a career offender based on his first-degree robbery conviction.

**VII.    The Substantive Reasonableness of Jones's Sentence**

Because we hold that the district court plainly erred in sentencing Jones as a career offender based on its conclusion that a conviction for first-degree robbery is necessarily a conviction for a "crime of violence" within the Career Offender Guideline and remand for resentencing on that basis, we need not address Jones's argument that his sentence was substantively unreasonable.

## CONCLUSION

For the reasons stated above, we VACATE the sentence of the district court and REMAND for resentencing in accordance with this opinion.